### R. E. O'Flynn & Son v. Ebelhar, et al.

(Decided November 22, 1918.)

### Appeal from Daviess Circuit Court.

1.   Contracts—Sale of Crop of Tobacco—Acceptance of Part of Crop —Counterclaim.—Where a purchaser of a crop of tobacco under an entire and not a severable contract accepted a portion of the crop and was sued for the purchase price thereof, his acceptance of a portion of the tobacco did not estop him from asserting a counterclaim against the plaintiff for a breach of the contract in refusing to deliver all the tobacco called for in the contract.

2.   Damages—Measure of Damages.—The measure of damages for the failure to deliver tobacco pursuant to a contract, is the difference, if any, between the contract price and the market price at the time fixed for the delivery.

W. P. SANDIDGE for appellants.

LOUIS, I. IGLEHEART for appellees.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

By a written contract, dated December 23rd, 1916, the appellees, Elizabeth Ebelhar and Tom Fenwick, her tenant, sold their crop of tobacco, estimated at 9000 pounds, more or less, including leaf, lugs and trash, to R. E. O'Flynn & Son for $11.00 per hundred pounds. The

contract provided that the tobacco was to be well picked. not to be sprinkled, and free from funk or mold. It also contained a memorandum showing that four acres of the crop was bright tobacco.

On January 5th, 1917, Fenwick and Peter Ebelhar, who represented his mother, Elizabeth Ebelhar, delivered 3145 pounds of tobacco, and, on the 25th of January they delivered 2645 pounds. O'Flynn & Son paid for these two deliveries in full.

On February 15th, 1917, appellees made a third delivery consisting of 4065 pounds of tobacco, which Murphy, the manager for O'Flynn & Son, at first refused to accept, without "docking" it, on account of its wet condition.

When this dispute arose over the condition of the tobacco R. E. O'Flynn was not at his factory, but in response to a message from his son he arrived there while Fenwick, Peter Ebelhar and Murphy were unloading the tobacco. R. E. O'Flynn testified that when he inquired why he had been sent for, Peter Ebelhar and Fenwick said, "Mr. Murphy wants to dock us on this tobacco," and that O'Flynn replied, "Don't you think you need docking?" And, according to O'Flynn, Fenwick then sought to persuade O'Flynn to accept that delivery by saying he yet had 1000 sticks of bright tobacco which he would deliver according to the contract, in good order and well picked. O'Flynn finally consented to receive the third delivery and offered to pay Fenwick one-half of the purchase price, and hold the remaining half until the delivery of the bright tobacco. Fenwick declined to postpone any portion of the payment and offered to take back the tobacco, but O'Flynn refused to surrender it.

Elizabeth Ebelhar and Fenwick thereupon sued O'Flynn & Son for $453.75, the contract price for the third delivery. By way of defense the answer set up the contract and alleged, in substance, that the plaintiffs had delivered all the dark tobacco but had retained all their bright tobacco in the crop sold to the defendants, amounting to at least 4000 pounds; that the bright tobacco was of a much better quality and of a much higher market price and value than the dark tobacco which was delivered; that the price of tobacco had advanced very much between the time of the sale and the time fixed for its delivery, and that the tobacco which the plaintiffs had re-

fused to deliver was then worth at least $24.00 per hundred pounds upon the Owensboro market. For this alleged breach of their contract, the defendants, by way of counterclaim, prayed judgment for $520.00 damages.

After testifying to the conversation above narrated, R. E. O'Flynn further said that he had never received a leaf of bright tobacco out of the three loads, which aggregated 9855 pounds, or nearly 1000 pounds more than was estimated. Fenwick testified as on cross-examination, but did not contradict R. E. O'Flynn's version of the conversation. According to R. E. O'Flynn's testimony the third delivery was retained until the bright tobacco should be delivered.

Upon the defendants' motion the court placed the burden of proof upon them, and at the close of their testimony the court peremptorily instructed the jury to find for the plaintiffs in the sum of $447.15, the purchase price of the third delivery. From a judgment entered upon that verdict the defendants appeal.

The proof showed that in the three deliveries made by appellees there were 3275 pounds of leaf tobacco, 3208 pounds of lugs, and 3310 pounds of trash, and no bright tobacco; and that Fenwick's entire crop was raised on ten acres. O'Flynn claimed and testified that the appellees had not only retained the bright tobacco contained in the crop which they had sold to the defendants, but that they had substituted and "run in" the dark tobacco of Peter Ebelhar; and in corroboration of this claim they pointed to the fact that while the check for the first delivery was made jointly to the plaintiffs, the second check, at Fenwick's direction, was drawn to the order of Peter Ebelhar.

Furthermore, R. E. O'Flynn's version of the conversation with Fenwick and Peter Ebelhar was not only substantially corroborated by Quesnel, and in part by Murphy, but it was not contradicted by Fenwick.

The circuit court seems to have made its ruling upon the theory that the acceptance of the tobacco estopped O'Flynn & Son from prosecuting a counterclaim against the plaintiffs for a breach of the contract. That ruling was correct in so far as it held defendants liable for the third delivery; but the court erred in not trying the counterclaim. If plaintiffs broke their contract by withholding the bright tobacco, to the damage of the defend-

ants, that fact presented a legitimate claim for damages, notwithstanding defendants had accepted the third delivery, and owed the contract price therefor. The counterclaim having been properly pleaded, and supported by proof, the court should have submitted that issue to the jury. The contract being entire and not severable, it required a delivery of the several kinds and grades of tobacco which were sold at one price. So, if appellees, retained their bright tobacco, appellants have been damaged in a sum which represented the difference between the purchase price of the tobacco retained and the market price thereof at the time of delivery; and for that sum they would be entitled to a credit upon the purchase price of the third delivery. In refusing to try that question the circuit court erred.

Judgment reversed and action remanded for further proceedings consistent with this opinion.