## Caskey v. Nussbaum et al.

(Decided January 22, 1929.)

ROBERT HUBBARD for appellant.

JOSEPH SOLINGER and ALEX H. VEENEMAN for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

Karl Nussbaum was the owner of the old Mellwood distillery plant located in the city of Louisville, and J. M. Shaneman was employed as day watchman. While on the premises Joseph Caskey, a young man under 21

years of age, was shot by Shaneman. In this action by Caskey, suing by his mother and next friend, against Nussbaum and Shaneman to recover for his injuries, the jury returned a verdict in favor of the defendants. Caskey appeals.

According to Caskey, he and his companion, Porter Parker, entered the premises early in the afternoon of September 15, 1926. The door was wide open, and they just walked in for an innocent purpose, and they were not trying to remove anything from the premises. While standing there, Shaneman came in the door behind them and shot. As he shot they both ran. Both he and Parker were struck. He did not put his hand on his hip when Shaneman "hollered." At the time he had no gun or weapon of any kind. Parker did not make a break at Shaneman as though he were going to hit him. Neither one of them had a rod in his possession, and neither one started after Shaneman with a rod. The bullet hit him before he ran. On the other hand, Shaneman testified that when he entered the premises he heard somebody and on looking up saw Caskey standing there with his hands on the switchboard trying to unscrew some of the brass. He said, "Halt!" When he said that, Caskey reeled around and put his hand on his hip pocket. He then saw his partner, Parker, coming at him with a rod. When he shot at Caskey, he wheeled, and as he wheeled he let the other boy have it in the right leg. The reason he shot at the boys was that he was an old man in a dark place, and from the motions they made he considered his life in danger, which it was.

On the trial, the court admitted evidence to the effect that Caskey had been arrested for breaking into other premises. If this evidence was offered for the purpose of impeaching Caskey as a witness, clearly it was not admissible. Under our Code, a witness may be impeached by the party against whom he is produced, by contradictory evidence, by showing that he has made statements different from his present testimony, or by evidence that his general reputation for untruthfulness or immorality renders him unworthy of belief, but not by evidence of particular wrongful acts, except that it may be shown by the examination of a witness or record of a judgment that he has been convicted of felony. Civil Code, sec. 597. On examination in chief, it is proper to inquire as to the general reputation of the witness for truth and veracity or as to his general moral character, but not as to partic-

ular acts of ignominy or turpitude. However, the particular facts may be inquired into on the other side, and such inquiry when begun on cross-examination may be pursued by the party impeaching, but he has no right on the examination in chief to inquire into the particular facts or general reputation as to such facts. Thurman v. Virgin, 18 B. Mon. 785. Whether or not it could have been shown that Caskey actually broke into other premises for the purpose of showing the intent with which he entered the premises in question, we need not determine, as no such evidence was admitted or offered. . Caskey's arrest on the charge of breaking into other premises was not admissible, as one's arrest is not conclusive of his guilt in a pending prosecution, to say nothing of its effect in a collateral proceeding. Of course, there is no merit in the contention that Caskey's character was put in issue by the inquiry of his counsel as to whether he was armed on the occasion in question or was in the habit of carrying arms. We therefore conclude that the admission of the evidence referred to was prejudicial error.

In the prefatory part of instruction No. 2 the court submitted the issue whether or not Joseph Caskey wrongfully entered the premises of the defendant and was unnecessarily interfering with or attempting to remove therefrom the property of the defendant. The point is made that there was no evidence on which to base this instruction. The point is not well taken. Shaneman testified as follows: "As I looked up and I saw Caskey standing there with his hands on the switchboard trying to unscrew some of the brass." Manifestly, if this be true, Caskey was unnecessarily interfering with or attempting to remove from the premises the property of the defendant.

Judgment reversed and cause remanded for a new trial consistent with this opinion.